**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DEXTER WALLACE,

       Petitioner,

v.                                                                           Case No. 08-12456

HUGH WOLFENBARGER,

       Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Dexter Wallace ("Petitioner"), presently incarcerated at the Handlon Correctional

Facility in Ionia, Michigan, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

In his *pro se* application, Petitioner challenges his conviction for second-degree criminal

sexual conduct,[1] and being a second felony habitual offender.[2]  For the reasons stated

below, the petition for writ of habeas corpus will be denied**.**

**I.  BACKGROUND**

Petitioner pleaded guilty but mentally ill to one count of second-degree criminal

sexual conduct and being a second felony habitual offender in the Ingham County

Circuit Court.  Petitioner was advised that these charges carried a maximum penalty of

twenty two and one half years in prison.  (Plea Tr. 3-5.)  Petitioner was informed of the

rights that he would be relinquishing by pleading guilty.  Petitioner further acknowledged

that, by pleading guilty, he would be giving up any claim at a later date that the plea was

---

[1]  Mich. Comp. Laws § 750.520c(1)(a); Mich. Stat. Ann. 28.788(3)(1)(a).

[2]  Mich. Comp. Laws § 769.10; Mich. Stat. Ann. 28.1082.

the result of any promises or threats that Petitioner did not reveal to the court at the time

of the plea.  (*Id.* at 6-7.)  In exchange for his plea, the prosecutor agreed to dismiss one

count of first-degree criminal sexual conduct and further agreed not to charge Petitioner

as a fourth felony habitual offender.  The prosecutor further agreed to dismiss a

separate case which charged Petitioner with bribery and witness intimidation. (*Id.* at 7-

8.)  Petitioner and his counsel both acknowledged that this was the full extent of the

plea agreement.  (*Id.* at 8.)  Petitioner acknowledged that the trial court had not made

any agreements regarding Petitioner's sentence.  Petitioner indicated further that no

one had promised him anything other than what was contained in the plea agreement.

(*Id.* at 9.)  Petitioner made out a factual basis for the plea. (*Id.* at 10-11.)  Prior to

accepting the plea, the prosecutor and defense counsel again indicated that they were

unaware of any promises, threats, or inducements other than those that had been

placed on the record.  (*Id.* at 12.)

Petitioner's sentencing took place on March 20, 2006.  Prior to sentencing, a

hearing was conducted on the issue of whether Petitioner had sexually penetrated the

victim, his daughter.  Petitioner's daughter testified that there were several different

incidents when she was touched inappropriately by Petitioner.  The victim indicated that

Petitioner touched her breast and her vagina.  (Sent. Tr. 5.)  Petitioner testified at the

hearing and denied ever sexually penetrating the victim.  (*Id.* at 15.)  The prosecutor

placed into evidence a Sexual Assault Nurse Examiner [SANE] report made by nurse

Sharon Salisbury.  (*Id.* at 3.)  In the SANE report, the nurse indicated that there were

tears in the victim's hymen.  The nurse also indicated in the SANE report that the victim

had informed her that Petitioner had placed his penis inside of her the night before the

examination.

The trial judge ruled that she would use the victim's statement to the nurse that was contained in the SANE report concerning penetration as a basis to determine Petitioner's sentencing guidelines range under the Michigan Sentencing Guidelines, because it was corroborated by physical evidence and was consistent with the victim's testimony in court at the sentencing hearing. The judge ruled that the SANE nurse's report and the victim's testimony were sufficient under a preponderance of evidence standard to conclude that the victim had been sexually penetrated on one occasion to support a scoring of 25 points under Offense Variable (OV) 11. The court also determined that there was a series of sexual touchings of the victim on prior occasions, which supported the scoring of OV 13 at 25 points for the prior occurrences that were not scored under OV 11 that involved touching, not penetration, and which showed a pattern involving three or more crimes against a person. The trial court scored Petitioner's sentencing guidelines range at 58-142 months. (*Id.* at 24-26.)

The judge sentenced Petitioner to one hundred and thirty two to two hundred and seventy months in prison. Petitioner indicated that he wanted to withdraw his plea, alleging that the trial court judge had agreed to sentence him at the lower end of the sentencing guidelines if he pleaded guilty. The trial court did not rule on Petitioner's motion to withdraw his plea. (*Id.* at 34-36.)

Petitioner's conviction was affirmed on appeal. *People v. Wallace*, No. 276072 (Mich. Ct. App. March 16, 2007), *leave to appeal denied at* 735 N.W.2d 267 (Mich. 2007).

In his original habeas petition, Petitioner seeks a writ of habeas corpus on the

3

following grounds:

I. Petitioner was entitled as a matter of due process to withdraw his plea when the judge breached the plea bargain and did not sentence him to the lower end to the guidelines.

II. Petitioner's plea was involuntary because it was induced by misrepresentation.

III. The court improperly relied on hearsay contained in a forensic report in determining that Petitioner had penetrated his daughter.

IV. The trial court erroneously scored points for Offense Variables 11 and 13 because the scoring of these variables on the basis of factual findings or conclusions that were not submitted and proven to a jury beyond a reasonable doubt nor admitted by Petitioner's plea violates Petitioner's Sixth Amendment rights under *Blakely v Washington*, and his Fourteenth Amendment due process rights under *Apprendi v New Jersey*.

In an amended petition for writ of habeas corpus, Petitioner seeks habeas relief

on this additional claim:

V.  Petitioner's due process right to be sentenced on the basis of accurate information was violated by the scoring of OVs 11 and 13.

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the

standard of review for habeas petitions brought under 28 U.S.C. § 2254:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Co

 (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

When a state court fails to adjudicate a habeas petitioner's claim on the merits,

federal habeas review is not subject to the deferential standard contained in § 2254(d) and a federal court is required to review that claim *de novo.*  *See Cone v. Bell*, 129 S. Ct. 1769, 1784 (2009); *See also McKenzie v. Smith*, 326 F.3d 721, 726 (6th Cir. 2003). The Michigan Court of Appeals and the Michigan Supreme Court denied Petitioner's applications for leave to appeal by form order.  In this case, "there are simply no results, let alone reasoning, to which this court can defer.  Without such results or reasoning, any attempt to determine whether the state court decision 'was contrary to, or involved an unreasonable application of clearly established Federal law,' 28 U.S.C. § 2254(d)(1), would be futile."  *McKenzie,* 326 F.3d at 727.

### III. DISCUSSION

### A.  Claims Nos. 1 and 2: the guilty plea claims.

Petitioner first contends that he should have been permitted to withdraw his guilty plea after the trial court judge "breached the plea bargain" by sentencing him to more than the low end of the sentencing guidelines.[3]  In his related second claim, Petitioner contends that his plea was involuntary because it was induced by misrepresentation by his defense counsel –or someone– which lead Petitioner to believe that he could withdraw his plea of guilty if he was not sentenced at the lower end of the sentencing guidelines range.

Petitioner has no absolute right to withdraw his guilty plea.  *See Shanks v.*

---

[3]  Any promises made by a judge in the course of a guilty plea colloquy operate as a promise made by the state in exchange for a defendant's waiver of rights and guilty plea.  *See Spencer v. Superintendent, Great Meadow Corr. Facility,* 219 F.3d 162, 168 (2d Cir. 2000).

*Wolfenbarger*, 387 F. Supp. 2d 740, 748, 655 (E.D. Mich. 2005) (internal citations

omitted).  Unless the plea violated a clearly-established constitutional right, whether to

allow the withdrawal of a criminal defendant's guilty plea is discretionary with the state

trial court.  *Id.*

A plea of guilty must be knowingly and voluntarily made.  The defendant must be

aware of the "relevant circumstances and likely consequences" of his plea.  *Hart v.*

*Marion Correctional Institution*, 927 F.2d 256, 257 (6th Cir. 1991).  The defendant must

also be aware of the maximum sentence that can be imposed for the crime for which he

is pleading guilty.  *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994).  When a petitioner

brings a federal habeas petition challenging his plea of guilty, the state generally

satisfies its burden by producing a transcript of the state court proceedings showing that

the plea was made voluntarily.  *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

The factual findings of a state court that the guilty plea was properly made are generally

accorded a presumption of correctness.  Petitioner must overcome a heavy burden if

the federal court is to overturn these findings by the state court.  *Id.*  Additionally, a

habeas petitioner bears a heavy burden of rebutting the presumption that his guilty plea,

as evidenced by the plea colloquy, is valid.  *See Hastings v. Yukins*, 194 F. Supp. 2d

659, 669 (E.D. Mich. 2002).

It is only when the consensual character of a guilty plea is called into question

that the validity of a guilty plea may be impaired.  *Mabry v. Johnson*, 467 U.S. 504, 508-

09 (1984).  A plea of guilty entered by one fully aware of the direct consequences,

including the actual value of any commitments made to him by the court, prosecutor, or

his or her own counsel, must stand unless induced by threats (or promises to

discontinue improper harassment), misrepresentation (including unfulfilled or unfulillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business, e.g., bribes. *Id.* at 509 (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)). A federal court will uphold a state court guilty plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and voluntarily chose to plead guilty. *See Hastings*, 194 F. Supp. 2d at 669.

In the present case, the trial court advised Petitioner of the maximum penalties for the offenses to which he was pleading guilty. Petitioner was advised of the rights to a trial that he would be waiving by pleading guilty. Petitioner was advised by the trial court that by pleading guilty, he would be giving up the right to claim at a later date that the plea was result of any promises or threats that Petitioner did not reveal to the court at the time of the plea. Petitioner was advised of the terms of the plea agreement and acknowledged that these were the complete terms of the agreement. Petitioner denied that any other promises had been made to get him to plead guilty. Most significantly, Petitioner expressly acknowledged that the trial judge had made no agreement regarding Petitioner's sentence. The court asked, "now, do you understand that I haven't made any agreements with anyone about what your sentence will be?" Petitioner responded, "yes." (Sent. Tr. 9.) While an unfulfilled state promise obtained in return for a guilty plea will entitle a habeas petitioner to habeas relief, *see Myers v. Straub*, 159 F. Supp. 2d 621, 627 (E.D. Mich. 2001) (internal citations omitted), a federal court sitting in habeas review should not "lightly find misrepresentation in a plea agreement." *Id.*

7

The plea transcript reveals unambiguously that there was no judicial sentencing

agreement concerning the lower end of the sentencing guidelines range –or anything

else.  Absent extraordinary circumstances, or some other explanation as to why a

defendant did not reveal other terms when specifically asked to do so by the trial court,

a plea agreement consists of the terms revealed in open court, where the trial court

scrupulously follows the required procedure for taking the defendant's plea.  *Baker v.*

*United States*, 781 F. 2d 85, 90 (6th Cir. 1986); *Hastings v. Yukins,* 194 F. Supp. 2d at

669.  Because a plea bargain is contractual in nature, it would violate established

contract-law standards to permit a defendant to attempt to prove that a plea agreement

is otherwise than it unambiguously appears on a thorough record.  *Baker,* 781 F.2d at

90.  Plea agreements are to be strictly construed.  *See United States v. Brummett*, 786

F.2d 720, 723 (6th Cir. 1986).  A term of a plea agreement "that is unambiguous on its

face and agreed to by the defendant in open court will be enforced."  *McAdoo v. Elo*,

365 F.3d 487, 497 (6th Cir. 2004).

In the present case, the only agreement made by the prosecutor at the time of

the guilty plea was that one count of first-degree criminal sexual conduct and the

original fourth felony habitual offender charge would be dismissed.  The prosecutor also

agreed to dismiss a second case which involved charges of bribery and witness

intimidation.  A "clear reading" of the plea agreement shows that there was no promise

by the prosecutor or the trial court that Petitioner would receive a sentence at the lower

range of the sentencing guidelines.  Petitioner has therefore failed to show that the

original terms of the plea agreement were breached by the prosecutor or the trial court.

*Myers*, 159 F. Supp. 2d at 628.  Moreover, Petitioner would not be entitled to relief on

his claim, where Petitioner expressly denied the existence of any off-the-record promises at the time of his plea, when queried by the trial court. *See Phipps v. Romanowski*, 566 F. Supp. 2d 638, 647 (E.D. Mich. 2008)*; See also Shanks*, 387 F. Supp. 2d at 751. Because it is clear from the record that no promises were made that have not been kept, or that the plea bargain was breached, Petitioner is not entitled to habeas corpus relief. *See Williams v. Anderson,* 498 F. Supp. 151, 152 (E.D. Mich. 1980).

To the extent that Petitioner claims that his trial counsel misled him regarding the terms of the plea agreement, a state court's proper plea colloquy will cure any misunderstandings that a petitioner may have had about the consequences of the plea. *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999). Thus, a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can never constitute an "extraordinary circumstance" under *Baker* when the court conducts a proper, clear, and thorough plea colloquy. *Id.*; *Hastings*, 194 F. Supp. 2d 670.

Finally, although Petitioner claims that he understood the plea agreement to guarantee him a sentence at the lower end of the sentencing guidelines range, habeas relief should not be granted by crediting a petitioner's subjective version of his understanding of the plea bargain. *See Nichols v. Perini,* 818 F.2d 554, 558-59 (6th Cir. 1987); *See also Doughty v. Grayson*, 397 F. Supp. 2d 867, 881-82 (E.D. Mich. 2005); *Hastings,* 194 F. Supp. 2d at 670*; Bair v. Phillips*, 106 F. Supp. 2d 934, 940-941 (E.D. Mich. 2000). Petitioner would therefore not be entitled to the withdrawal of his plea based on any claim that his attorney gave him erroneous information concerning the

terms of the plea agreement where Petitioner was given the correct information concerning the terms of the plea agreement by the sentencing judge at the time of the plea and Petitioner expressly denied the existence of other representations or promises. *See United States v. Todaro*, 982 F.2d 1025, 1029-30 (6th Cir. 1993); *Hastings,* 194 F. Supp. 2d 670.  Petitioner is not entitled to habeas relief on his first and second claims.

**B.  Claims Nos. 3, 4, and 5.  The sentencing claims.**

The court will consolidate Petitioner's three sentencing claims for clarity. In his third claim, Petitioner contends that the trial court improperly relied on hearsay information contained in the SANE report that Petitioner had sexually penetrated the victim to assess points under OV 11 of the Michigan Sentencing Guidelines.  In his fourth claim, Petitioner claims that the trial court violated the Sixth Amendment by using factors to score OV 11 and OV 13 of his sentencing guidelines which had not been submitted to a jury and proven beyond a reasonable doubt or admitted by Petitioner.  In his fifth claim, Petitioner relied on inaccurate information in sentencing Petitioner.

A Michigan trial court's allegedly improper interpretation of the state's sentencing guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim.  *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003); *See also Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001).  "A federal court may not issue the writ on the basis of a perceived error of state law."  *Pulley v. Harris,* 465 U.S. 37, 41 (1984).  Petitioner has no state-created liberty interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence.  *See Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004).  "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum

sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating his guideline score or in departing above his sentencing guidelines range alone would not merit habeas relief. *Id.*; *See also Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999).

Petitioner would not be entitled to habeas relief on his third claim involving the admission of hearsay evidence at his sentencing. The Sixth Amendment Confrontation Clause permits the admission of testimonial hearsay evidence at sentencing proceedings. *See U.S. v. Paull*, 551 F.3d 516, 527-28 (6th Cir. 2009); *cert. den.* 130 S. Ct. 187 (2009); *United States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir. 2006); *United States v. Stone*, 432 F.3d 651, 654 (6th Cir. 2005). Petitioner would not be entitled to habeas relief on this claim.

In his fourth claim, Petitioner argues that the trial court violated his right to due process of law by its use of facts not determined by a jury. In support of his claim, petitioner relies on the case of *Blakely v. Washington*, 542 U.S. 296 (2004)*,* in which the U.S. Supreme Court has held that other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Id.* at 301 (*citing Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

The problem with petitioner's reliance on *Blakely* is that the case in *Blakely* involved a trial court's departure from Washington's determinate sentencing scheme. Michigan, by contrast, has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum sentence. The maximum

sentence is not determined by the trial judge but is set by law.  *See People v. Drohan*, 715 N.W.2d 778, 790 (Mich. 2006); *People v. Claypool*, 684 N.W.2d 278, 286 n.14 (Mich. 2004) (both citing Mich. Comp. Laws § 769.8).  "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence."  *Drohan*, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must be set presumptively within the appropriate sentencing guidelines range.  *See People v. Babcock*, 666 N.W.2d 231, 236 n.7 (2003) (citing Mich. Comp. Laws § 769.34(2)).  The trial judge sets the minimum sentence, but can never exceed the maximum sentence.  *Claypool,* 684 N.W.2d at 286 n.14.  Michigan's indeterminate sentencing scheme is therefore unaffected by the U.S. Supreme Court's holding in *Blakely.  Drohan*, 715 N.W. 2d at 791.

The decision in *Blakely* has no application to petitioner's sentence. Indeterminate sentencing schemes, unlike determinate sentencing schemes, do not infringe on the province of the jury.  *See Blakely*, 542 U.S. at 304-05, 308-09.  This was made clear in *Cunningham v. California*, 549 U.S. 270 (2007), where the Supreme Court explained that states may retain determinate sentencing by requiring the jury "to find any fact necessary to the imposition of an elevated sentence" or by allowing judges "'to exercise broad discretion . . . within a statutory range,' which 'everyone agrees,' encounters no Sixth Amendment shoal."  *Id.* at 294 (*quoting United States v. Booker*, 543 U.S. 220, 233 (2005)); *see also Harris v. United States*, 536 U.S. 545, 565 (2002) ("[w]hether chosen by the judge or the legislature, the facts guiding judicial discretion below the statutory maximum need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt" and the judge "may impose the minimum,

the maximum, or any other sentence within the range without seeking further

authorization from those [grand and petit] juries—and without contradicting *Apprendi*.").

The holdings in *Apprendi* and *Blakely* do not apply to judicial factfinding that

increases a minimum sentence so long as the sentence does not exceed the applicable

statutory maximum. *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009); *see*

*also Montes v. Trombley,* 599 F3d 490, 495 (6th Cir. 2010) (the *Blakely-Apprendi* rule

requiring any fact that increases the penalty for a crime beyond the prescribed statutory

maximum to be submitted to a jury and proved beyond a reasonable doubt does not

apply to laws that set the maximum sentence by statute but that permit a judge to

determine the minimum sentence through judicial factfinding, and does not preclude a

judge from utilizing the preponderance-of-the-evidence standard when finding facts

related to sentencing). Indeed, "[B]y clarifying that minimum sentences fall outside

*Apprendi*'s scope, *Harris* forecloses [petitioner's] claim." *Chontos,* 585 F.3d at 1002.

The Sixth Amendment jury trial right merely "ensure[s] that the defendant 'will never get

more punishment than he bargained for when he did the crime'"; it does "not promise

that he will receive 'anything less' than that." *Id.* (*quoting Harris*, 536 U.S. at 566

(*quoting Apprendi*, 530 U.S. at 498 (Scalia, J., concurring)). When Petitioner admitted

that he violated the second-degree criminal sexual conduct and second habitual felony

offender statutes, he bargained that if a jury found him guilty, that he could face up to

twenty two and one half years in prison. Therefore, "regardless of the ways that judicial

factfinding and Michigan's guidelines affected his minimum sentence," Petitioner "got no

more than he bargained for." *Chontos,* 585 F.3d 1002. Because Michigan's sentencing

laws create an indeterminate-sentencing scheme, it does not violate Petitioner's due

process rights or his right to a jury trial.  *Montes,* 599 F.3d at 497.  Petitioner is not

entitled to habeas relief on his *Blakely* claim.  *Id.*; *see also Tironi v. Birkett*, 252 F. App'x

724, 725 (6th Cir. 2007).

In his fifth claim, Petitioner contends that the trial court relied on inaccurate

information in assessing points against him under the sentencing guidelines for sexual

penetration.  A criminal defendant possesses a constitutional right not to be sentenced

on the basis of "misinformation of constitutional magnitude."  *Roberts v. United States*,

445 U.S. 552, 556 (1980); *see also Townsend v. Burke*, 334 U.S. 736, 741 (1948)

(stating that reliance on "extensively and materially false" information, which the

prisoner had no opportunity to correct, violates due process of law).  In order to prevail

on a claim that a trial court relied on inaccurate information at sentencing, a habeas

petitioner must demonstrate that the sentencing court relied upon this information and

that it was materially false.  *Collins v. Buchkoe*, 493 F.2d 343, 345-46 (6th Cir. 1974);

*Welch*, 49 F. Supp. 2d at 1007.  Where a petitioner fails to demonstrate in his petition

that the sentencing court relied upon materially false information in imposing sentence,

the claim is without merit.  *Thomas v. Foltz*, 654 F. Supp. 105, 108 (E.D. Mich. 1987).

Petitioner's daughter testified at the sentencing hearing that he had touched her

vagina.  The SANE report indicated that the nurse had found tears to the victim's

hymen.  Finally, the nurse indicated in her report that the victim had informed her that

Petitioner had inserted his penis inside of her.  Here, a finding that the sentencing judge

did not rely on inaccurate information when assessing points against Petitioner for

sexual penetration "is at least minimally consistent" with the facts of Petitioner's case,

*Lechner v. Litscher*, 213 F. Supp. 2d 975, 985 (E.D. Wis. 2002); in fact, it is completely

14

consistent with the facts. Therefore, this court cannot grant Petitioner habeas relief on his fifth claim. *Id.*

## C. The certificate of appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.[4] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. The court concludes that jurists of reason would not find the court's assessment of the constitutional claims debatable or wrong. The court thus declines to issue Petitioner a certificate of appealability.

## IV. CONCLUSION

Accordingly,

---

[4] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

IT IS ORDERED that the petition for writ of habeas corpus [Dkt. # 1] as amended

[Dkt. # 9] is DENIED.

IT IS FURTHER ORDERED that the court DECLINES TO ISSUE a certificate of

appealability.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 27, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, April 27, 2010, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522